

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

January 20, 1960

Honorable Burney Walker            Opinion No. WW-788
Criminal District Attorney
Waco, Texas                        Re: Whether an officer who
                                       resigns his office upon
                                       becoming a candidate for
                                       another office, as pro-
                                       vided in Article XVI,
                                       Section 65 of the Con-
                                       stitution, is eligible
                                       for appointment to fill
                                       the vacancy created by
                                       his resignation.

Dear Mr. Walker:

Your request for an opinion reads as follows:

"The County Commissioners Court of McLennan
County has called upon my office for an opinion.
The factual background of this inquiry is this:
The County Judge of McLennan County is presently
serving a term which ends December 31, 1962. The
County Judge contemplates announcing for one of
the District Judge offices here. Under Article
16, Section 65 of the Texas Constitution, as
amended November 4, 1958, this action of the County
Judge would constitute a resignation from the
office of County Judge.

"The Commissioners Court then wants to know
whether they can legally, after the announcement
for District Judge, appoint the incumbent County
Judge in the manner prescribed by law, to fill
the vacancy created by his own resignation and
serve until his successor has qualified for the
office.

"The specific proposition, therefore, submitted
to you is as follows:

"'Where an elected official resigns, either voluntarily or automatically by operation of law, as the result of becoming a candidate for another office of profit or trust, under the laws of this state; and the unexpired term of the office being vacated exceeds one year, may he be appointed, in the manner prescribed by law, to fill the vacancy created by his own resignation and serve until his successor has qualified for the office?'

"Attached herewith is a brief prepared for the County Judge by the law firm of Mixson and Haley, on this question.

"I concur and agree with the result reached by Mixson and Haley, and I have been able to find no prohibition, under Texas laws, which would prevent the re-appointment in question.

"It would be greatly appreciated if we could have your department's opinion in this connection at your earliest convenience."

The provision in Article XVI, Section 65 of the Texas Constitution which is here involved was added by an amendment proposed by the Legislature in 1957 and adopted in 1958. It reads as follows:

"Provided, however, if any of the officers named herein shall announce their candidacy, or shall in fact become a candidate, in any General, Special or Primary Election, for any office of profit or trust under the laws of this State or the United States other than the office then held, at any time when the unexpired term of the office then held shall exceed one (1) year, such announcement or such candidacy shall constitute an automatic resignation of the office then held, and the vacancy thereby created shall be filled pursuant to law in the same manner as other vacancies for such office are filled."

The answer to your question turns on the purpose of this provision, and specifically whether it was intended to make the resigning officer ineligible to serve in that office while he was a candidate for another office. A constitutional provision of doubtful meaning should be construed with a view to ascertaining and carrying out the purpose for which it was intended,

having regard to the "evils sought to be remedied." Travelers Ins. Co. v. Marshall, 124 Tex. 45, 76 S.W.2d 1007 (1934); Markowsky v. Newman, 134 Tex. 440, 136 S.W.2d 808 (1940). This provision does not in express terms make the resigning officer ineligible to appointment to fill the vacancy, but we are of the opinion that it should be so construed if one purpose of the amendment was to prevent the officer from holding the office during candidacy for another office.

A review of the background of this provision is essential to an ascertainment of its purpose. By constitutional amendments adopted in 1954, the terms of certain county and district officers were increased from two years to four years, and the terms were staggered so that approximately one-half of the offices are regularly filled by election every two years. Under this new arrangement, it was possible for an officer to run for another office in the middle of his term without relinquishing the office he then held. If he was not elected to the other office, he continued to hold the office to which he had been previously elected; if he was elected to the other office, his acceptance of that office created a vacancy of two years in the office he formerly held, and the vacancy had to be filled by appointment until the next general election. The effect of election to the other office was to turn an elective office into an appointive office for approximately half the term (and in practical effect for a full two years), a result which is contrary to the often-expressed concept that elective offices should be filled by the people rather than by appointment and that the office should be returned to the people for filling as soon as practicable after a vacancy occurs. In our opinion, one purpose of the 1958 amendment was to reduce the duration of appointments. Under this amendment, there is still a vacancy which must be filled by appointment from the date of the resignation until the following general election, but the length of the time for which the appointee serves will in most instances be considerably less than for a vacancy occurring after the election. Appointment of the resigning officer to fill the vacancy until the next general election would not be inconsistent with this purpose, and if this were the only purpose of the amendment we would hold that he could be appointed to fill the vacancy. The brief which you furnished us reaches the conclusion that this is the only purpose of the amendment and that the officer could be appointed to fill the vacancy. However, we are convinced that the Legislature also had another purpose in mind when it proposed the amendment and that the people generally so understood when they adopted it.

Unfortunately, the Texas Legislature does not preserve an official record of committee hearings and floor debates and

discussions. There is nothing in the legislative journals and other official records to give a clue to the purposes of the amendment beyond the wording of the amendment itself. But as to likely intent of the Legislature and the understanding and intent of the electorate concerning its meaning and purpose, we have found that in the numerous public discussions of the amendment prior to the 1958 election the commentators consistently mentioned that one of the purposes was to prevent an office holder from devoting more than the last year of his four-year term of office to a political campaign for another office. The following excerpts illustrate the nature of these comments.

Dallas News, October 17, 1958:

"Those favoring the amendment say the main purpose of 4-year terms, as authorized in the constitutional change of 1954, was to make it possible for county officers to devote almost their entire terms to duties of office. Under the 2-year term system, they had to run for re-election one year out of every two.

"When the 4-year terms were approved, the argument goes, a possibility was more or less overlooked--such office holders could run for other offices in the middle of their terms.

"The new rule, if approved by voters, would tend to force office holders to give undivided attention to his office for at least three years of a four-year term."

Houston Chronicle, October 8, 1958:

"The primary purpose of setting up four-year terms for local officers was to enable them to devote more time to office duties than was possible--or expedient--when they had to run for re-election every two years. It was the Legislature's idea in submitting Amendment No. 4 that leaving open the opportunity to run for some other office at mid-term would partly defeat that purpose."

Report prepared by Tax Research Association of Houston and Harris County, Inc.:

"When the constitutional amendment extending the term of various county officials from two to

four years was adopted in 1954, it was the conception that the longer terms of office would reduce time spent in running for election and would allow county officials to concentrate on their jobs. That is, a four year term, it was thought, would permit an official to give his office his undivided attention for at least three years, without the necessity of running again.

"Because, under the provisions of the 1954 amendment, approximately half of the officers of each county are elected every two years for four year terms, it is possible for an officer to run for a different office at the general election coming in the middle of his term and thereby defeat the basic purpose of the 1954 amendment. This new amendment would require the official to resign before announcing for some other office and thus prevent him from campaigning for another office and presumably neglecting to adequately fulfill the duties of the office to which he was previously elected."

Bulletin prepared by League of Women Voters of Texas:

"Those who are FOR /the amendment_7 say:

"The automatic resignation feature would keep these officials on the job rather than campaigning for a different office at taxpayers' expense, with the resultant loss of service.

"Under present provisions a candidate may wait to resign from one office until the last minute before being sworn in for another. This practice is not fair to the people for it then leaves an unexpired term to be filled by a costly special election or by appointment."

While these private, unofficial interpretations are not conclusive of the intent and purpose of the amendment, they give an insight into the prevailing conception of the "evil sought to be remedied" by the amendment. This purpose of seeking to limit political activity to the last year of the four-year term also furnishes an explanation of why the amendment provides for automatic resignation if the officer becomes a candidate for another

office more than one year before expiration of his term rather than tying the resignation to the length of the unexpired portion of the term after the election at which he is a candidate for another office.

As further substantiation of this purpose, another constitutional amendment proposed by the same Legislature and adopted at the same election as the 1958 amendment to Section 65 of Article XVI, also contains a similar provision for automatic resignation of municipal officers holding terms of more than two years. Texas Constitution, Article XI, Section 11, adopted November 4, 1958. This provision with respect to municipal officers cannot be satisfactorily rationalized on the ground that its sole purpose was to reduce the appointive tenure or to eliminate the expense of a special election which would result from the officer's election to another office, but it comports with the purpose to prevent the officer from engaging in a political campaign for another office at any time except the last year of his term.

To permit an officer who is running for another office in the middle of his term to be reinstated in the office by appointment after his resignation would defeat this purpose of the amendment. Being convinced that this was one of the purposes, we hold that he may not be appointed to fill the vacancy created by his resignation.

In the brief which you furnished us, it was stated that the only comparable statutory enactment or constitutional provision that the author had been able to find is a Montana statute, construed in Mulholland V. Ayres, 99 P.2d 234 (Mont. Sup. 1940). We also have been unable to find any other case construing a similar provision. The Supreme Court of Montana summarized the statute and its purpose as follows:

"Section 1 of Chapter 116 of the Laws of 1937 provides, in substance, that whenever any person holding any office under the laws of the state, the term of which is longer than two years, shall become a candidate for election to any elective office, other than for re-election to the office held by him, he shall resign the office held by him, and if he fails to do so the office shall become vacant and unoccupied ipso facto. Section 2 provides for filling such vacancies. Section 3 provides: 'This act shall not apply * * * (e) to the incumbent of any office whose term of office expires within (70) seventy days after the ensuing general election.

"* * *

"The question presented is whether there is now a vacancy in the office of state senator for Silver Bow county. In considering this question we must look first to the object and purpose of the Act and the evil sought to be remedied by it. It is plain that the purpose of Chapter 116 is to encourage the filling of vacancies by election, rather than by appointment, by reducing the duration of appointments and to discourage a person already holding one office carrying more than a two-year term and the term of which would not expire until more than seventy days after the ensuing general election, from retaining that office while endeavoring to obtain another at such election. The effect of Chapter 116 is to cause a vacancy to exist in time so that it can be filled by election at the same election which causes the vacancy, and making the interim appointment of short duration."

The court construed the statute as having as one of its purposes the reduction of duration of appointments, but it also found that another purpose was to discourage the office holder from retaining the office while endeavoring to obtain another. The question of eligibility for appointment to fill the vacancy was not involved in that case. Whether the court would have used the word "prevent" instead of "discourage" if that question had been presented is conjectural, but at least it can be seen that the court considered retention of the office while seeking another as one of the evils sought to be remedied.

In this opinion we are not passing on the constitutionality of the 1958 amendment to Section 65 of Article XVI with regard to possible infraction of the equal protection clause of the 14th Amendment to the United States Constitution, or other possible constitutional objections which might be leveled against it. We recognize that this requirement of automatic resignation imposed on officers covered by Section 65, when there is no comparable provision applicable to district and appellate judges and other district and state officers having terms of four or six years, and various other phases of its application as construed in this opinion, raise a possibility of invalidity under the Federal Constitution. See, e.g., Mulholland v. Ayres, supra; Burroughs v. Lyles, 142 Tex. 704, 181 S.W.2d 570 (1944). But we do not feel that it is necessary for us to pass on its constitutionality in answering your question. We are mentioning possible invalidity not by way of intimating that we think it is invalid under the Federal Constitution, but because the brief which you

furnished us has suggested that it would be invalid if the officer is ineligible for appointment. We do not think it is incumbent upon the Commissioners Court to obtain a ruling on its constitutionality before making an appointment in the event the County Judge becomes a candidate for the other office. Equal protection is a private right to be asserted by the individual who claims to have been deprived of it. If the County Judge becomes a candidate for the other office and at the same time insists that he is entitled to continue in his present office, he will have recourse to the courts to protect whatever right he might have to the office against the adverse claim of the Commissioners Court's appointee.

This opinion is limited to eligibility for appointment where there is more than one year remaining in the unexpired term of the resigning officer. It does not rule on whether he would be eligible for appointment if the unexpired term was less than one year when the appointment was made.

SUMMARY

A County Judge or other precinct, county or district officer listed in Article XVI, Section 65 of the Texas Constitution who voluntarily resigns his office to become a candidate for another office or who automatically resigns his office by becoming a candidate for another office as provided in Article XVI, Section 65, is not eligible, during such candidacy, for appointment to fill the vacancy created by his resignation where there is more than one year remaining in the unexpired term of the office from which he resigns.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Mary K. Wall
Mary K. Wall
Assistant

MKW:ljb

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman

Cecil C. Cammack, Jr.
James R. Irion, III
Elmer McVey
C. K. Richards

REVIEWED FOR THE ATTORNEY GENERAL
BY:
     Leonard Passmore